IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>JADE INVESTMENTS GROUP, LLC, JADEFX LTD aka JADEFX LLC, and JACOB JUMA OMUKWE,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CASE NO. 11-CV-128<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES AND OTHER EQUITABLE RELIEF**

**I. SUMMARY**

1. From at least June 2009 through the present (the "relevant period"), Defendants, Jacob Juma Omukwe ("Omukwe"), JadeFX Ltd. aka JadeFX LLC ("JadeFX"), and Jade Investments Group, LLC ("Jade") (collectively, the "Defendants"), operated a scheme to defraud the public by soliciting retail customers to trade off-exchange foreign currency ("forex") on their behalf through the Defendants' website, www.jadefx.com.

2. Defendant Omukwe falsely claims that: (1) customer money is used only to trade forex; (2) customer money is segregated from JadeFX's operating accounts; and (3) customer funds are protected from any potential bankruptcy of JadeFX.

3.     Contrary to these statements regarding the use and safety of customer money, the majority of customer money has been and continues to be misappropriated by Omukwe, acting through JadeFX and Jade, for his personal benefit.

4.     To date, Omukwe, acting in his personal capacity as well as an agent of JadeFX, has fraudulently solicited, accepted and misappropriated over $3.7 million from more than 500 customers located in the United States and throughout the world.

5.     By dint of this conduct, the Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of Sections 4b(a)(2)(A) and (C) of the Commodity Exchange Act (the "Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XII (the CFTC Reauthorization Act of 2008 ("CRA")) § 13102, 122 Stat. 1651 (enacted June 18, 2008) to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C). In addition, JadeFX and Omukwe are in violation of Section 2(c)(2)(C)(iii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I) and Commission Regulations ("Regulations") 5.3(a)(6)(i) and (ii), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. §§ 5.3(a)(6)(i) and (ii)) for failure to register as a retail foreign exchange dealer and an associated person of a retail foreign exchange dealer, respectively.

6.     Omukwe committed the acts and omissions described herein within the course of his employment at, or agency with, JadeFX and Jade; therefore, JadeFX and Jade are liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2010), for violations committed by their agent Omukwe.

7.     Omukwe is the controlling person of JadeFX and Jade, and failed to act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations alleged

herein. Omukwe is therefore liable for JadeFX's and Jade's violations of the Act, respectively, as amended by the CRA, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006).

8.  Accordingly, the U. S. Commodity Futures Trading Commission (the "CFTC" or "Commission") brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006) and Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2), to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act. In addition, the Commission seeks civil monetary penalties and such other equitable relief as this Court may deem necessary or appropriate.

9.  Unless restrained and enjoined by this Court, Defendants will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II. JURISDICTION AND VENUE

10. The Act establishes a comprehensive system for regulating registrants. Section 6c of the Act, 7 U.S.C. § 13a-1 (2006) authorizes the Commission to seek injunctive relief against any person or entity whenever it shall appear to the Commission that such person or entity has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any Commission rule, regulation or order.

11. This Court has jurisdiction over this matter as alleged herein pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006) and Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2).

12. Venue properly lies with the Court pursuant to Section 6c of the Act, in that the Defendants are found in, inhabit, or transact business in this district, and the acts and practices in violation of the Act occurred, are occurring, or are about to occur within this district.

## III. THE PARTIES

A. Plaintiff

13. The **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, as amended by the CRA, and the Regulations promulgated under it, 17 C.F.R. §§ 1.1 *et seq.* (2010). The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

B. Defendants

14. **Jacob Juma Omukwe** is a Canadian citizen who resides in Wisconsin Dells, Wisconsin, from where he operates JadeFX and Jade. Omukwe is the owner of both JadeFX and Jade. Omukwe has never been registered with the Commission in any capacity.

15. **Jade Investments Group, LLC** is a Wisconsin limited liability company. Its principal place of business is in Wisconsin Dells, Wisconsin. Jade was incorporated in July of 2007 for the purpose of foreign exchange trading. Jade has never been registered with the Commission in any capacity. Jade is not a financial institution, registered broker dealer, insurance company, financial holding company, or investment bank holding company, or an associated entity of such entities.

16. **JadeFX LTD aka JadeFX LLC**, is a corporate entity with its principal place of business in Wisconsin Dells, Wisconsin. JadeFX was originally incorporated in Belize City, Belize, and subsequently organized as a Wisconsin limited liability company under the name JadeFX LLC on or about April 30, 2010. JadeFX has never been registered with the Commission in any capacity. JadeFX is not a financial institution, registered broker dealer,

insurance company, financial holding company, or investment bank holding company, or an associated entity of such entities.

## IV. FACTS

17. Starting no later than June 2009, Omukwe, individually and in his capacity as an officer, employee, and agent of JadeFX and Jade, began fraudulently soliciting customers and misappropriating customer funds by offering forex trading.

18. According to the "customer account agreement" that each customer enters into with JadeFX, "JadeFX Ltd is a counterparty to a trader's transactions." The "customer account agreement" explicitly states that all forex trading is on a leveraged or margined basis.

19. Although the Defendants' website, www.jadefx.com, contains many contradictory statements that appear to be the product of the Defendants having "lifted" statements from various other websites hosted by legitimate forex dealers, the JadeFX website repeatedly represents that: (1) all customer funds are traded in forex, (2) customer funds are "completely segregated from JadeFX's operating accounts," and (3) customer funds are protected in the event of "any bankruptcy proceedings."

20. Omukwe, through representations on the website, further claims that JadeFX is operated out of Belize and does not conduct business in the United States.

21. All of the representations contained in paragraphs 19 through 20 are false. The Defendants do not trade forex with all of customer funds, Defendants do not segregate customer funds or separate customer funds from JadeFX's operating accounts, Defendants do not provide bankruptcy protection for customer money, and JadeFX operates out of Wisconsin Dells and not Belize. Defendants conduct business in the United States. Omukwe knows all of these

5

representations were false because, as detailed below, he personally operates all aspects of Jade and JadeFX, and controls the bank accounts and customer funds.

22. Defendants operate a web of corporate bank and PayPal accounts to accept customer funds. Customers wire or deposit money into six different corporate bank accounts and two PayPal accounts. An analysis of these JadeFX and Jade corporate bank accounts reveals there are no separate bank accounts for customer money. Instead of segregating customer money, Omukwe, using bank accounts held under the names of JadeFX and Jade, commingles customer funds, which are thereafter exclusively controlled by Omukwe.

23. From June 2009 to January 27, 2010, Defendants solicited and accepted over $400,000 from customers all over the world, including U.S. customers, using the misrepresentations on the JadeFX website. However, during this eight month period, JadeFX had no forex trading account to place forex trades on behalf of customers.

24. Defendants, through Omukwe, commingles customer funds in various accounts in the name of JadeFX and Jade.

25. From January 27, 2010, until the present, Defendants solicited and received at least $3.3 million from customers using the misrepresentations on the JadeFX website. Omukwe, through Defendants, misappropriates customer funds by (1) transferring approximately $1.3 million into a forex account in the name of JadeFX exclusively controlled by Omukwe and (2) keeping the remaining funds, approximately $2 million, in bank accounts exclusively controlled by Omukwe.

26. Omukwe, through Defendants, further misappropriates customer funds by paying JadeFX's expenses and Omukwe's personal expenses out of JadeFX and Jade bank accounts that are funded by customer money. For example, Omukwe uses customer funds in these bank

accounts to pay for insurance, an employee's salary, federal taxes, utility bills, computers, and meals, among other things.

27. Furthermore, Omukwe routinely makes cash withdrawals and writes checks to himself from the corporate bank accounts that hold customer money.

28. In order to foster the false impression that customer money is segregated from that of JadeFX, customers can download a software program from the Defendants' website that purportedly enables customers to place forex trades in the customer's account. While Defendants create the appearance of segregated accounts for customers using the software program, in fact no such accounts exist.

29. In reality, customers who send funds to the JadeFX or Jade bank accounts have no control over their funds once the money is sent to the Defendants' bank accounts, which are controlled by Omukwe.

30. Omukwe, through the JadeFX website, asserts that JadeFX operates outside of the United States, does not do business in the United States, and is immune from federal and state laws in the U.S., including the Act. All of these representations are false.

31. Numerous documents demonstrate that the Defendants conduct business in the United States. For example: Jade's and JadeFX's bank account records show that (1) Jade and JadeFX opened twelve accounts with U.S. banks, (2) six out of twelve bank accounts accept funds from U.S. customers, (3) Omukwe, through Defendants, used corporate bank accounts to pay for personal and business expenses in the United States, such as, a U.S. employee's salary, and (4) Omukwe makes cash withdrawals from banks in Wisconsin. Additionally, JadeFX's and Jade's bank account records also reveal that on March 17, 2010 and on May 7, 2010, Omukwe went into a U.S. bank's branch office in Baraboo, Wisconsin and opened new bank accounts for

Jade and JadeFX respectively, using a Wisconsin mailing address for Jade and JadeFX that is identical to Omukwe's residential address in Wisconsin.

## V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE:
### VIOLATION OF SECTIONS 4b(a)(2)(A) AND (C) OF THE ACT
### FRAUD IN CONNECTION WITH FOREX

32. The allegations set forth in Paragraphs 1 through 31 are realleged and incorporated herein by reference.

33. Under Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, to be codified at §§ 7 U.S.C. §§ 6b(a)(2)(A) and (C), in relevant part, it is unlawful for any person, in or in connection with any order to make or the making of a futures contract, for or on behalf of any other person, (A) to cheat or defraud or attempt to cheat or defraud other persons, and (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract.

34. During the relevant period, Omukwe, through JadeFX and/or Jade, misrepresented material facts to prospective and actual customers of JadeFX and misappropriated their funds in connection with the order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract, or transaction that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market, in violation of Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) and (C).

35. Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, apply to Defendants' forex transactions "as if" they were a contract of sale of a commodity for future

delivery. Section 2(c)(2)(C)(iv) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iv).

36. As alleged above, during the relevant period, Omukwe knowingly, or with reckless disregard for the truth, violated Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, to be codified at §§ 7 U.S.C. §§ 6b(A)(2)(A) and (C) with respect to acts occurring on or after June 18, 2008, by, among other things, (1) omitting material information, including the fact that Omukwe is misappropriating customer funds; (2) falsely representing that all customer funds would be used to trade forex; (3) falsely representing that customer funds are segregated from the operating expenses of JadeFX; (4) falsely misrepresenting that customer funds are protected should JadeFX file for bankruptcy; and (5) misappropriating customer funds for Omukwe's personal use.

37. Each misrepresentation, omission of material fact, and misappropriation by Omukwe occurred within the scope of his office as an agent of JadeFX, and therefore, JadeFX is liable for Omukwe's violations of Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006) and Regulation 1.2, 17 C.F.R. § 1.2 (2010).

38. Each misappropriation by Omukwe occurred within the scope of his office as an agent of Jade, and therefore, Jade is liable for Omukwe's violations of Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2 (2010).

39. Omukwe controlled JadeFX and Jade, respectively, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, JadeFX's and Jade's conduct alleged in this Complaint; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b)

(2006), Omukwe is liable for JadeFX's and/or Jade's violations of Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C).

40. Each misrepresentation, omission of material fact, or misappropriation, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C).

## COUNT TWO:
## VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT AND COMMISSION REGULATION 5.3(a)(6)(i):
## FAILURE TO REGISTER AS A RETAIL FOREIGN EXCHANGE DEALER

41. The allegations set forth in Paragraphs 1 through 31 are realleged and incorporated herein by reference.

42. Pursuant to Regulation 5.1(h)(1), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. § 5.1(h)(1)), a retail foreign exchange dealer means any person that is, or that offers to be, the counterparty to a retail forex transaction, subject to certain exceptions not relevant herein. Pursuant to Section 2(c)(2)(C)(iii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I), and Regulation 5.3(a)(6)(i), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. § 5.3(a)(6)(i)), retail foreign exchange dealers are required to be registered with the Commission as of October 18, 2010.

43. JadeFX is a retail foreign exchange dealer because it offered, and continues to offer, to be the counterparty to a retail forex transaction, and does not qualify as a person described in sub-paragraph (aa), (bb), (cc)(AA), (dd), (ee) or (ff) of Section 2(c)(2)(B)(i)(II) of the Act, 7 U.S.C. § 2(c)(2)(B)(i)(II).

44. JadeFX acted as a retail foreign exchange dealer subsequent to October 18, 2011, but failed to register with the Commission as a retail foreign exchange dealer in violation of

Section 2(c)(2)(C)(iii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I), and Regulation 5.3(a)(6)(i), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. § 5.3(a)(6)(i)).

45. Omukwe controlled JadeFX and Jade, respectively, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, JadeFX's conduct alleged in this Complaint; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), Omukwe is liable for JadeFX's violations of Section 2(c)(2)(C)(iii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I), and Regulation 5.3(a)(6)(i), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. § 5.3(a)(6)(i)).

46. Each instance that JadeFX acted as a retail foreign exchange dealer but failed to register with the Commission as a retail foreign exchange dealer is alleged as separate and distinct violation of Section 2(c)(2)(C)(iii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I), and Regulation 5.3(a)(6)(i), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. § 5.3(a)(6)(i)).

**COUNT THREE:**
**VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT AND COMMISSION REGULATION 5.3(a)(6)(ii):**
**FAILURE TO REGISTER AS AN ASSOCIATED PERSON OF A RETAIL FOREIGN EXCHANGE DEALER**

47. The allegations set forth in Paragraphs 1 through 31 are realleged and incorporated herein by reference.

48. Pursuant to Regulation 5.1(h)(2), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. § 5.1(h)(2)), an associated person of a retail foreign exchange dealer means any natural person associated with a retail foreign exchange dealer as defined in Regulation 5.1(h)(1), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. §

11

5.1(h)(1)), as a partner, officer or employee (or any natural person occupying a similar status or performing similar functions), in any capacity which involves:

> (i) The solicitation or acceptance of retail forex customers' orders (other than in a clerical capacity); or
>
> (ii) The supervision of any person or persons so engaged.

49. Pursuant to Section 2(c)(2)(C)(iii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I), and Regulation 5.3(a)(6)(ii), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. § 5.3(a)(6)(ii)), associated persons of retail foreign exchange dealers are required to be registered with the Commission as of October 18, 2010.

50. Subsequent to October 18, 2011, Omukwe acted as an associated person of JadeFX, a retail foreign exchange dealer, but failed to register with the Commission as an associated person of retail foreign exchange dealer in violation of Section 2(c)(2)(C)(iii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I), and Regulation 5.3(a)(6)(ii), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. § 5.3(a)(6)(ii)).

51. Omukwe's failure to register as an associated person of a retail foreign exchange dealer occurred within the scope of his office as an agent of JadeFX, and therefore, JadeFX is liable for Omukwe's violations of Section 2(c)(2)(C)(iii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I), and Regulation 5.3(a)(6)(ii), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. § 5.3(a)(6)(ii)), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006) and Regulation 1.2, 17 C.F.R. §1.2 (2010).

52. Each instance that Omukwe acted as an associated person of a retail foreign exchange dealer but failed to register with the Commission as an associated person of a retail foreign exchange dealer is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)

of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I), and Regulation 5.3(a)(6)(ii), 75 Fed. Reg. 55,410, 55,433 (Sept. 10, 2010) (to be codified at 17 C.F.R. § 5.3(a)(6)(ii)).

## VI. RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

a) An order finding that Defendants violated Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C).

b) An order finding that Defendants JadeFX and Omukwe violated Section 2(c)(2)(C)(iii)(I) of the Act and Regulation 5.3(a)(6)(i).

c) An order finding that Defendant Omukwe violated Section 2(c)(2)(C)(iii)(I) of the Act and Regulation 5.3(a)(6)(ii).

d) Orders of preliminary and permanent injunction prohibiting Defendants and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with the Defendants, including any successor thereof, from engaging, directly or indirectly:

(i) in conduct in violation of Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C);

(ii) in conduct in violation of Section 2(c)(2)(C)(iii)(I) of the Act and Regulations 5.3(a)(6)(i) and (ii);

(iii) trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act);

(iv) entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2010)) ("commodity options"), and/or foreign currency (as described in

Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own personal accounts or for any accounts in which they have a direct or indirect interest;

 (v) having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

 (vi) controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

 (vii) soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

 (viii) applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010); and

 (ix) acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2010)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010).

e) An order directing Defendants, as well as any successors and/or agents of Defendants, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices that constitute violations of the Act, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

f) An order directing Defendants to make full restitution to every person or entity whose funds Defendant received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

g) Enter an order directing Defendants and any successor thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the clients whose funds were received by them as a result of the acts and practices which constituted violations of the Act, as described herein;

h) An order directing Defendants to pay civil monetary penalties of not more than the higher of $140,000 or triple the monetary gain to proposed Defendants for each violation of the Act or Regulations;

i) An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

j) Such other and further relief as the Court deems just and appropriate.

Dated this 1st day of March, 2011

Respectfully Submitted,
by:
/s/ Tracey Wingate
Tracey Wingate
Gregory Scopino
Sophia Siddiqui
Timothy J. Mulreany

Attorneys for the Plaintiff
U.S. Commodity Futures Trading Commission
Three Lafayette Center
1155 21st Street, NW
Washington, DC 20581
twingate@cftc.gov
(202) 418-5319

gscopino@cftc.gov
(202) 418-5175
(202) 418-5523(facsimile)
ssiddiqui@cftc.gov
(202) 418-6774
tmulreany@cftc.gov
202-418-5306